*Notice: This order is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.gov.*

# In the Supreme Court of the State of Alaska

| | |
|---|---|
| **In the Matter of Jacob Sonneborn, Regarding Fees and Costs Imposed in Bradbury-Haltness v. Haltness, III**<br><br>**Jacob Sonneborn,**<br>　　　Applicant,<br>v.<br>**Kara Nyquist,**<br>　　　Respondent.<br>Trial Court Case No. **3AN-17-06859CI** | Supreme Court No. **S-19129**<br><br>**Order**<br>Original Application<br><br>**Order No. 124 – December 6, 2024** |

Before: 　　Maassen, Chief Justice, and Carney, Borghesan, Henderson, and Pate, Justices.

On June 4, 2024, Jacob Sonneborn filed an original application for relief from an attorney's fees award imposed on him following his court-ordered withdrawal from representing the defendant, Edward Haltness, in *Bradbury v. Haltness*, Case No. 3AN-17-06859CI. Sonneborn contends that the award was imposed without the reasonable notice and opportunity to be heard required by Alaska Civil Rule 95(a).[1] The plaintiff, Sarah Bradbury, filed a response on June 21, 2024. We set out the background in some detail because of its importance to our decision.

---

[1]　　The rule provides: "For any infraction of these rules, the court, *after providing reasonable notice and an opportunity to be heard*, may withhold or assess costs or attorney's fees as the circumstances of the case and discouragement of like conduct in the future may require; and such costs and attorney's fees *may be imposed upon offending attorneys* or parties." (Emphasis added.)

Sonneborn filed a limited entry of appearance on Haltness's behalf prior to a February 22, 2024 scheduling conference. Though he never filed a general entry of appearance, Sonneborn continued to file documents on Haltness's behalf in the months that followed.

On March 5 Bradbury's lawyer, Kara Nyquist, filed a petition for a stalking protective order against Sonneborn; a short-term order was entered. Also pending against Sonneborn were various criminal charges related to his conduct toward Nyquist and others.

On March 18 Bradbury moved to disqualify Sonneborn on grounds that his conduct during the course of the litigation had gone "[f]ar beyond the acceptable bounds of advocacy" and violated various provisions of the Alaska Rules of Professional Conduct. Bradbury asked the court to "disqualify Mr. Sonneborn from this case[,] . . . provide its findings on Mr. Sonneborn's behavior to the Alaska Bar Association's disciplinary section, order that he bear any costs and fees incurred by Ms. Bradbury in bringing this motion, and that he be fined $10,000.00." The motion's conclusion does not mention attorney's fees specifically but asks that the court "disqualify and sanction Mr. Sonneborn and provide its findings on his gross misconduct to the disciplinary board of the Alaska Bar Association."

Haltness filed a response on March 26 that addressed both the motion to disqualify and Bradbury's pending motion to modify a civil no-contact order. At the time there were a number of other custody- and visitation-related motions pending, and an evidentiary hearing was scheduled for April 8. Haltness asked that all "motion practice" — including Bradbury's motion to disqualify Sonneborn — be held in abeyance pending the evidentiary hearing. He gave four reasons why the court should wait to decide the motion: (1) while his counsel's behavior was perhaps "relevant to this case," it did not "demonstrate a conflict of interest or some other incurable prejudice that might befall Ms. Bradbury if counsel [was] allowed to continue to represent

[Haltness]"; (2) the protective order, the pending criminal charges, and the conditions of Sonneborn's pretrial release protected Nyquist "from any conduct that could remotely be described as criminal in nature"; (3) the issues presented by the motion to disqualify would be better handled by the courts in the criminal cases and the Bar; and (4) there was "no emergency that would justify stopping all progress in this litigation." Finally, Sonneborn, as "the undersigned," promised to "maintain absolute decorum with opposing counsel" in the meantime. Haltness did not specifically address Bradbury's requests for sanctions and attorney's fees.

On April 2 we granted the Bar's motion to suspend Sonneborn on an interim basis with a two-week grace period for wrapping up his work on his cases under the supervision of another lawyer. That same day, Bradbury filed a reply in support of her motion to disqualify, reiterating her request that Sonneborn himself "be required to bear any costs and fees incurred by Ms. Bradbury in bringing and defending this motion, and that he be fined $10,000." The argument for a sanction and attorney's fees was developed over the course of several pages, and it closed with a request that the court "use its authority under Alaska Rules of Civil Procedure 11 and 95 to order Mr. Sonneborn to pay both a $10,000 fine and all attorney's fees and costs incurred by Ms. Bradbury as a result of needing to file and defend her *Motion to Disqualify Counsel*." This reply was served on Sonneborn via email.

On April 3 the superior court granted the motion to disqualify Sonneborn from further representing Haltness, referencing our suspension order and the pending criminal charges and concluding that "conduct warranting the issuance of a stalking protective order against opposing counsel . . . is not conducive to fair and efficient proceedings . . . and undermines the integrity of the bar and public trust in the justice system." The court specifically denied Bradbury's request for "a sanction of $10,000 against Mr. Sonneborn in this case" but did not mention attorney's fees. This order was served on both Sonneborn and Haltness, his client.

On April 12 Bradbury filed her motion for full costs and attorney's fees related to the motion to disqualify, seeking a total of $14,434. The motion appears to have been served only on Haltness — now self-represented — and not Sonneborn. The court granted the motion by order dated May 1 calculating full fees pursuant to Alaska Civil Rule 82 and imposing them against Sonneborn pursuant to Civil Rule 95(a). The court explained in a hand-written note that the fees award was essentially unopposed: "On March 18, 2024, Ms. Bradbury requested that the Court order that Mr. Sonneborn bear any costs and fees incurred by Ms. Bradbury in bringing the Motion to Disqualify Opposing Counsel. Mr. Sonneborn did not oppose this request in any filing prior to the April 3, 2024 Order Granting Motion to Disqualify." The order was served on both Sonneborn and Haltness. Sonneborn then filed his original application with this court.

The issue before us is whether Sonneborn received the "reasonable notice and . . . opportunity to be heard" that Rule 95(a) requires before attorney's fees may be imposed as a sanction. The operative phrase was added to Rule 95(a) in 2007.[2] It is more perfunctory than the more longstanding notice provision in Rule 95(b), which allows a court to impose a fine up to $50,000 against an attorney for rule violations but only "after reasonable notice and an opportunity to show cause to the contrary, and after hearing by the court, if requested." We have interpreted the Rule 95(b) notice provision as requiring "a judge to explicitly notify an attorney when sanctions are being considered and to afford him a reasonable time in which to show cause why the sanctions are not warranted."[3] The court of appeals explained 36 years ago in *Weidner v. State*:

---

[2]     Alaska Supreme Court Order No. 1643 (October 15, 2007).

[3]     *Tobey v. Superior Ct. Third Jud. Dist.*, 680 P.2d 782, 787 (Alaska 1984); *see also In re Schmidt*, 114 P.3d 816, 824 (Alaska 2005) ("We have construed the notice requirement in Rule 95(b) to mean that 'counsel must be given some opportunity to explain his conduct, before he can be sanctioned.' " (quoting *Stephenson v. Superior Ct., Fourth Jud. Dist.*, 697 P.2d 653, 655 (Alaska 1985))).

> Although Civil Rule 95(b) requires that a sanctioned attorney receive a hearing, the amount of notice, the amount of time for the attorney to prepare, and the extensiveness of the hearing required depend on the facts of the case. Where the facts are straightforward and there is no showing that a more extensive hearing is necessary to present other evidence, *a brief hearing on short notice may satisfy Alaska Civil Rule 95(b) requirements.* The trial court has considerable discretion in determining the time of the hearing under Alaska Civil Rule 95(b). [4]

The rule has thus been interpreted to require both (1) that the court inform the attorney of the prospect of sanctions, and (2) an actual hearing if requested, not just an "opportunity to be heard" in the sense of the opportunity to submit arguments on paper.

We indicated in a recent case, *Pruitt v. State*,[5] that the phrase "opportunity to be heard" in Rule 95(a) likewise means an actual hearing if requested. In *Pruitt* we reviewed a superior court's order requiring a losing constitutional claimant to pay Civil Rule 82 attorney's fees. We held that while constitutional claimants are shielded from Rule 82 awards, they may be required to pay attorney's fees as sanctions under Civil Rules 95 or 37, but "the court must follow the procedures specified by the applicable rules before it imposes sanctions."[6] "Chief among the requirements is an opportunity to be heard."[7] Notably, the parties in *Pruitt* had fully briefed the attorney's fees issues on the merits, albeit under Rule 82 rather than Rules 95 and 37, and Pruitt had had the opportunity to argue against the prevailing litigant's claim that his case was frivolous, both when opposing the fees motion and again on reconsideration. Acknowledging that the court's findings of bad faith would justify sanctions, however, we observed that

---

[4]     764 P.2d 717, 721 (Alaska App. 1988) (emphasis added) (citation omitted).

[5]     526 P.3d 136 (Alaska 2023).

[6]     *Id.* at 144-45.

[7]     *Id.* at 145.

"rather than scheduling a hearing, *as required by Rule 95* and Rule 11, the court awarded [the prevailing litigant] Rule 82 attorney's fees for Pruitt's actions. This was error."[8] We concluded that "[t]he failure to comply with the governing rules requires us to reverse the order awarding attorney's fees and to remand to the superior court for further proceedings if the court intends to impose sanctions against Pruitt."[9]

We now conclude that Sonneborn was entitled, first, to notice that the court was considering an award of attorney's fees as a sanction against him. The Rule 95(b) cases are clear that the court has the obligation to inform the attorney of that prospect, and we do not see a compelling reason why we would interpret "reasonable notice" in Rule 95(a) differently. Here, Bradbury clearly requested both sanctions and attorney's fees, both in her motion to disqualify and again in her reply in support of that motion, but the court's order on the motion denied sanctions and said nothing about attorney's fees. Sonneborn thus had no clear notice from the court that it was still considering Bradbury's request that attorney's fees be imposed as a sanction, and, significantly, Bradbury's subsequent motion for attorney's fees was served on Haltness but not Sonneborn, presumably because Sonneborn was no longer the attorney of record.

Second, Sonneborn was entitled to a hearing if he asked for one. When he filed his opposition to the motion to disqualify, Sonneborn asked that the motion be stayed pending an upcoming evidentiary hearing (which he ultimately did not attend because he had been ordered to withdraw in the meantime). While the superior court

---

[8]     *Id.* at 144 (emphasis added).

[9]     *Id.* at 145. A 2005 case, *In re Schmidt*, could be read as reaching a conclusion different from *Pruitt*'s. There, where the superior court had assessed costs against an attorney pursuant to Rule 95(a) for his failure to timely file a brief, we held that "any notice deficiency that may have occurred was cured by Schmidt's opportunity to file a motion for reconsideration." 114 P.3d 816, 825 (Alaska 2005). But *Schmidt* was decided two years before the notice requirement was added to Rule 95(a), so our review was focused on the minimum requirements of due process. *Id.* at 824-25.

correctly observed that Sonneborn never opposed the fees request, we conclude that his opposition to the motion to disqualify should reasonably have been read as asking for the opportunity to address the motion in court along with the other pending matters.

Accordingly, we VACATE the Civil Rule 95(a) attorney's fees award and remand to the superior court for further proceedings on Bradbury's request for sanctions under the rule.